## SMITH v. COKER.

1. There was no error in refusing to admit in evidence certified copies of registered deeds, when it was not shown that the originals had been destroyed, or that they were lost or inaccessible, or that due diligence had been exercised in endeavoring by proper search and inquiry to ascertain in whose custody they were.
2. When the finding of a jury in a justice's court upon issues of fact is directly supported by testimony, it can not be said that the superior court on certiorari erred in holding that the verdict was not "contrary to the evidence."
3. One who, while in possession of premises as the tenant of another, promised to pay rent therefor to a third person, could not, on the ground that the promise was made to prevent a wrongful eviction, defeat a distress warrant sued out by the promisee, without showing that the threatened eviction would have been unlawful.

Argued March 17, — Decided·May 12, 1900.

Certiorari. Before Judge Henry. Floyd superior court. August 23, 1899.

*Rowell & Rowell,* for plaintiff in error.
*M. B. Eubanks,* contra.

LUMPKIN, P. J.   A distress warrant sued out by W. H. Coker against Nathan Smith was levied on property belonging to the latter.   The defendant filed a counter-affidavit alleging that the sum distrained for was not due, because he had never rented from the plaintiff the premises for which the rent was claimed or recognized him as landlord, but on the contrary had expressly refused to do so.   The issue thus made was found against the defendant in a justice's court, and he sued out a certiorari, to the overruling of which by the superior court he excepted.   The petition for certiorari in general terms complained (1) that the magistrate erred in refusing to admit certain documentary evidence; and (2) that the verdict was contrary to law and to the evidence.

1. The documentary evidence just referred to consisted of certified copies of two registered deeds, one from C. W. Borders to J. A. Stansbury and A. Rawlings, and the other from Stansbury and Rawlings to Hattie E. Borders.   The petition for certiorari recites that the justice of the peace rejected these papers because they were only certified copies, notwithstanding that counsel for Smith, by way of accounting for the originals, stated in his place that Hattie E. Borders had been for some time and was then residing in the State of Texas; that Smith "had made every endeavor to obtain the originals of these deeds from every source where it would avail for him to do so, and had failed to get them."   There was no error in rejecting these documents. In the first place it does not distinctly appear that the originals had been destroyed, or were lost or beyond the jurisdiction of the court; secondly, the statement of counsel in his place, even giving it the force of sworn testimony, as to what his client had done in searching for the originals, was not proper proof as to the alleged efforts of Smith to find the deeds; and thirdly, the loose statement embraced in the words just quoted certainly did not show that any one had exercised due diligence in endeavoring to ascertain in whose custody the deeds really were.   The court ought to have been distinctly informed, by one having personal

knowledge of the facts, as to the extent of the search and of whom inquiries were made, in order to be able to pass intelligently upon the question of diligence. Smith's attorney might have thought that his client's search was sufficiently exhaustive and that it was prosecuted in good faith and with all reasonable diligence; but if the facts had been developed, the court might very properly have been of a different opinion. In other words, counsel, upon information derived from his client, the particulars of which were not disclosed to the court, undertook to pass upon the very question which it was the duty of the court to decide, and in effect asked the court to concur in the correctness of his (counsel's) conclusion, in ignorance of the facts upon which it was based.

2. As a witness in his own behalf, Coker testified on the trial in the magistrate's court that, having purchased at sheriff's sale the property for which he claimed rent, he and the sheriff went to Smith's place of business and informed him that the officer would dispossess him unless he agreed to become Coker's tenant and pay him rent at the rate of five dollars per month; that Smith agreed to this, that he remained in possession accordingly; and that the stipulated rent for one month was due and unpaid. Coker put in evidence a deed to himself from the sheriff, reciting that the property in dispute had been sold to the former by the latter under an execution in favor of Coker against one C. W. Borders. The testimony of Coker was corroborated by that of the sheriff. On the other hand, Smith swore positively that he never agreed to become the tenant of Coker or to pay him rent, but that he had expressly refused to enter into a contract with Coker respecting the use and occupation of the property. Smith further testified, in substance, that he went into possession of the premises as a tenant of one Amos Black and had retained possession all the while by virtue of his contract with Black. A witness named Robert Love corroborated Smith as to what was said in the interview between him and Coker and the sheriff. Upon the issue thus presented by the conflicting testimony of Coker and the sheriff on the one side, and Smith and Love on the other, the jury found in favor of Coker. It is impossible to ascertain either from the petition

for certiorari or the magistrate's answer that any other issue of fact was submitted to the jury. Manifestly their finding was warranted, for they had the right to believe Coker and the sheriff and to disbelieve Smith and Love. As stated above, the petition for certiorari alleges that the verdict was contrary to the evidence. It does not undertake to point out how or in what respect the finding of the jury was erroneous. So far as we can discover, they passed upon a single disputed question of fact, viz.: did Smith, or did he not, agree to become Coker's tenant and pay rent to him? They found in the affirmative upon positive testimony directly supporting their verdict. Certainly, then, it could not be said that the superior court erred in holding that the petition for certiorari was without merit in so far as. it averred that the verdict was contrary to the evidence.

3. In alleging that it was contrary to law the petition is as. non-committal as in the other attack upon the verdict, of which we have just disposed. There is complete silence as to how the law was violated by the finding of the jury. If, therefore, the loose and general assignment that the verdict was contrary to law is entitled to any consideration, it must be upon the idea. that, taking the evidence most favorably to Coker, the verdict upon the facts thus established was on its face illegal. We can not say that this is so. Coker purchased the property at a sale thereof under an execution against C. W. Borders. Accordingly, Coker had a right to evict one claiming possession as a tenant of Black, if Black's claim of title depended upon a deed executed by Borders after the date of the judgment against him under which the property was sold to Coker. The rejected deeds. might have thrown some light on this question, but they are out of the case, and properly so, for reasons above given. It does. appear that Black claimed under a deed from the Citizens Bank and Trust Company, to which and another corporation Mrs. Hattie Borders had conveyed the property by a security deed embracing a power of sale. No title was shown in Mrs. Borders, and, for aught that appears, she may have held under a deed from C. W. Borders executed after the date of the judgment against him. It is perfectly safe then to say that the record does not affirmatively show that the threatened eviction of Smith

would have been unlawful. So far, therefore, as he is concerned, it should be assumed that it was lawful. This being so, if he really agreed, as was found by the jury, to pay rent to Coker, he should have been compelled to comply with his contract unless he showed some better reason for refusing to do so than that argued here by his counsel, viz., that, being the tenant of Black, he wrongfully attorned to Coker. The attornment was not wrongful or improper if Coker had a right to evict Smith; and, as has been seen, Smith completely failed to show that Coker had no such right.

*Judgment affirmed. All concurring, except Fish, J., absent.*